---

Ex parte KYLE.

(District Court, W. D. Arkansas. April 12, 1895.)

1. INDIAN TERRITORY— CRIMINAL JURISDICTION OF INDIANS — EFFECT OF NATURALIZATION.

If a Cherokee court has acquired jurisdiction of a case where a citizen of that country is charged with larceny, the fact that such citizen is naturalized under the following act of congress: "That any member of

any Indian Tribe or Nation, residing in the Indian Territory, may apply to the United States court therein to become a citizen of the United States, and such court shall have jurisdiction thereof, and shall hear and determine such application as provided in the statutes of the United States. * * * Provided, that the Indians who become citizens of the United States under the provisions of this act do not forfeit or lose any rights or privileges they enjoy, or are entitled to, as members of the Tribe or Nation to which they belong" (Act Cong. May 2, 1890),—does not, after jurisdiction has once attached, divest the court of jurisdiction.

2. CRIMINAL LAW—CONTINUING JURISDICTION.

When jurisdiction of a court has once vested, it is not divested by a change of circumstances. The jurisdiction depending on the condition of a party is governed by that condition as it was at the commencement of the prosecution by finding the indictment.

3. CONSTRUCTION OF STATUTES.

Statutes should be construed in the interest of the enforcement of laws, and, if possible, so as to protect the rights of every one subject to them, as well as the rights of communities which may be seriously affected by a wrong construction of the law.

(Syllabus by the Court.)

Petition by Elijah Kyle for a writ of habeas corpus. Dismissed.

The facts in this case, as set up in the petition for the writ of habeas corpus, show that the petitioner stands charged before the district court of Sequoyah district, Cherokee Nation, with the crime of larceny; and, according to the allegations in the indictment against him, the crime was committed about the 1st of February, 1893. On the 7th of November, 1894, he was arrested, and subsequently indicted for said crime. On July 2, 1894, he was tried by the said court for the alleged offense. The jury disagreed. On January 7, 1895, he was again tried for the offense. The jury again disagreed. The case was then continued to February 11, 1895. While the case was pending on said continuance the petitioner filed his petition in the United States court for the Indian Territory, asking that under the act of congress of May 2, 1890, he be naturalized, so that he might become a citizen of the United States; the facts as to his status being that he was formerly a white man, a citizen of the United States, but that he became an adopted citizen of the Cherokee Nation by marriage. On the 1st of February, 1895, he was naturalized by the said court, and made a citizen of the United States, in pursuance of the above-named act of congress, which provides, by section 43: "That any member of any Indian Tribe or Nation, residing in the Indian Territory, may apply to the United States court therein to become a citizen of the United States, and such court shall have jurisdiction thereof, and shall hear and determine such application as provided in the statutes of the United States. * * * Provided, that the Indians who become citizens of the United States under the provisions of this act do not forfeit or lose any rights or privileges they enjoy, or are entitled to, as members of the Tribe or Nation to which they belong."

Grace & Forrester, for petitioner.
Cravens & Cravens, for the Cherokee Nation.

PARKER, District Judge (after stating the facts). The first question that presents itself is as to what is the true construction of this act. It seems, by its language, to undertake to make a man a citizen of the United States, and at the same time to leave him an Indian citizen. This, however, in my judgment, would not be a reasonable construction of the statute. It is a canon of construction that we must always, if possible, construe a statute in harmony with reason. Taking that view of it, the effect of the statute, to me, seems to be to give the naturalized citizen of the

United States, who before naturalization was an Indian citizen, the rights of a political and jurisdictional citizen of the United States. That is to say, if he has lived in a place where he would have a right to vote and hold office, and to exercise all other political rights, his condition by naturalization is such that he is entitled to these rights, that he also, by such naturalization, has conferred upon him jurisdictional citizenship; that is to say, he can go into the courts of the United States, and invoke the aid of their laws for his protection, and he may be subjected in such courts to such laws. But by the reasonable construction of the terms of the proviso he still retains any property rights that he may have had because of his former relation to the Indian Tribe or Nation to which he belonged. It seems to me that this is the only reasonable construction that can be given to the statute.

The remaining question in this case is, what effect does this statute have toward divesting the jurisdiction of the Indian court in this case, when that jurisdiction had already attached; for before suing out this writ he had been arrested, and twice tried. Can his act by which he obtained naturalization on the 1st of February, 1895, subsequent to his indictment and trial, divest the Indian court of jurisdiction? We are to construe statutes in the interest of the enforcement of the law, and, if possible, are to so construe them as to protect the rights of every one subject to them, as well as the rights of communities which may be seriously affected by a wrong construction of the law. If it be true that by naturalization a citizen of the Indian country can divest the jurisdiction of courts of crimes with which he may be charged after that jurisdiction has attached, will not the most serious consequences to the peace of that country ensue? The Indian Nations are making an honest effort to enforce the law, especially for the protection of life. This can be especially said with reference to the Cherokee Nation. If the petitioner in this case can escape the exercise of jurisdiction over him by becoming naturalized after that jurisdiction has attached, any man who is indicted for murder in an Indian court, after such indictment has been found, and while the same is pending against him, may do the same thing. And, in order to escape conviction and punishment, of course, they would all do it. The courts of the United States could not punish him, because they had no jurisdiction of him at the time of the commission of the crime, and the consequence would be that by becoming a citizen of the United States he would escape all punishment. Such a privilege was never intended to be attached by the congress of the United States to the great right of citizenship under this government. And, looking at the consequences that would ensue from a construction of the statute so as to give the party a right to a discharge in this case, the most powerful reasons exist why the law should not be construed so as to divest the Indian court of jurisdiction after it has once attached. I do not conceive that there is any trouble upon this question, as it has been many times decided by the courts of the country. In the case of U. S. v. Dawson, 15 How. 467, the principle which had been often decided before by the supreme

court of the United States was fully recognized,—that, "where the jurisdiction of a court over the subject-matter is once vested, it is not divested by subsequent change of circumstances." That was a case which grew out of the following facts: In 1844 the congress of the United States passed a law attaching the Indian country to the district of Arkansas, giving to the United States district court of Arkansas, holding its sessions at Little Rock, jurisdiction to hear and determine such cases of crimes occuring in the Indian country as any court of the United States had jurisdiction over. In 1851, after Dawson et al. had been indicted, and while the case was pending in the United States court for the district of Arkansas, congress passed a law establishing the Western district of Arkansas, and attaching the Indian country, for jurisdictional purposes, to the Western district; and the question was whether or not the United States district court of the district of Arkansas retained jurisdiction of the Case of Dawson. Upon that state of facts the court held that the status of the party at the time the jurisdiction was acquired determined the jurisdiction, and, if the jurisdiction over the subject-matter had vested, that a subsequent change of circumstances did not affect that jurisdiction. In the case of Connolly v. Taylor, 2 Pet. 556, the supreme court held, where there is no change of party, the jurisdiction depending on the condition of the party is governed by that condition as it was at the commencement of the suit. And in Mollan v. Torrance, 9 Wheat. 537, the court declared that the jurisdiction depends upon the state of things at the time of the action brought, and, after it is once vested, cannot be ousted by subsequent change of residence of either of the parties. And in Dunn v. Clarke, 8 Pet. 1, the court held that any change in the residence or condition of the parties cannot take away jurisdiction which has once attached. In the case of Morgan v. Morgan, 2 Wheat. 299, the court said, "We are all of opinion that the jurisdiction, having once vested, did not divest by the change of residence of either of the parties." In the case of Culver v. Woodruff Co., reported in 5 Dill. 392, Fed. Cas. No. 3,469, the court held that where the status of the parties is such as to give the federal court jurisdiction, a change of such status pending the suit does not affect the jurisdiction. It seems to me that this principle of the law applies to the case of the petitioner. Public policy demands this construction. It is in harmony with reason, and such a construction is an encouragement for the Indian Nations to enforce the law against all persons over whom their courts have jurisdiction; and, if this construction is not to prevail, they enter upon its enforcement with the probability that, before the law can be vindicated, a party charged with a crime will swear himself away from their courts by becoming a naturalized citizen of the United States. According to my judgment, the petitioner could not divest the Cherokee court of jurisdiction over him in this way. The writ of habeas corpus is therefore ordered dismissed.